**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
**500 James Robertson Parkway**
**Nashville, TN 37243-1131**
**PH - 615.532.5260, FX - 615.532.2788**
**brenda.meade@tn.gov**

RECEIVED

Regulatory

July 07, 2010

North American Specialty Ins Co
650 Elm Street, 6Th Fl
Manchester, NH 03101
NAIC # 29874

Certified Mail
Return Receipt Requested
7009 2820 0003 2647 8514
Cashier # 4081

Re:   City Of Goodlettsville  V.  North American Specialty Ins Co

   Docket # 10C2374

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served June 30, 2010, on your behalf in connection with the above-styled proceeding. Documentation relating to the subject is herein enclosed.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Davidson County
    1 Public Square, Room 302
    Nashville, Tn 37219-6303

# STATE OF TENNESSEE
# DAVIDSON COUNTY
# 20TH JUDICIAL DISTRICT

☒ First
☐ Alias
☐ Pluries

CITY OF GOODLETTSVILLE

CIVIL ACTION DOCKET NO. 10C2374

_____ Plaintiff

Vs.

NORTH AMERICAN SPECIALTY
INSURANCE COMPANY

_____ Defendant

Method of Service:
☐ Davidson County Sheriff
☐ Out of County Sheriff
☐ Secretary of State
☐ Certified Mail
☐ Personal Service
☒ Commissioner of Insurance

To the above named Defendant: Commissioner of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243

You are summoned to appear and defend a civil action filed against you in the Circuit Court, 1 Public Square, Room 302, P.O. Box 196303, Nashville, TN 37219-6303, and your defense must be made within thirty (30) days from the date this summons is served upon you. You are further directed to file your defense with the Clerk of the Court and send a copy to the Plaintiff's attorney at the address listed below.

In case of your failure to defend this action by the above date, judgment by default will be rendered against you for the relief demanded in the complaint.

ISSUED: June 25, 2010

RICHARD R. ROOKER
Circuit Court Clerk
Davidson County, Tennessee

By: _____
Deputy Clerk

| ATTORNEY FOR PLAINTIFF or PLAINTIFF'S ADDRESS | JOE M. HAYNES - HAYNES, FREEMAN & BRACEY, PLC |
|---|---|
| | 140 North Main Street, P. O. Box 527 |
| | Address |
| | Goodlettsville, Tennessee 37070-0527 |

TO THE SHERIFF:

Please execute this summons and make your return hereon as provided by law.

RICHARD R. ROOKER
Circuit Court Clerk

Received this summons for service this _____ day of _____ 20____

_____
SHERIFF

If you have a disability and require assistance, please contact 862-5204.

IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE

**CITY OF GOODLETTSVILLE** )
)
    Plaintiff )
)
vs. ) NO. _____ D.C.
)
**NORTH AMERICAN SPECIALTY** )
**INSURANCE COMPANY** )
)
    Defendant )

FILED
2010 JUN 25 AM 10:09
RICHARD R. ROOKER, CLERK

## C O M P L A I N T

Comes the Plaintiff, City of Goodlettsville, and would show unto the Court as follows.

1. The City of Goodlettsville is a municipal corporation duly chartered and authorized under the laws of the State of Tennessee with offices located at 105 South Main Street, Goodlettsville, Davidson County, Tennessee 37072.

2. The Defendant, North American Specialty Insurance Company, is an insurance company authorized to do business in the State of Tennessee and is located at 13010 Morris Road, Suite 150, Alpharetta, Georgia 30004.

3. The unnamed Defendant herein, Dial Properties, LLC, was a contractor authorized to do business in the State of Tennessee as a limited liability corporation. The contractor sought and was granted approval for the development and construction of town homes at Windsor Green which was a condominium project. Upon making application for approval by the Planning Commission for the City of

Goodlettsville and in order to complete approval and obtain building permits, it was necessary for Dial Properties to obtain performance bonds to guarantee its performance in accordance with the plans approved by the City of Goodlettsville Planning Commission.

4. Dial Properties obtained from the Defendant, North American Specialty Insurance Company, performance bonds to insure the performance of the construction contract. The first Performance Bond issued by the Defendant was dated October 16, 1998, in the amount of $192,261.00 which guaranteed the performance for the installation of storm drainage, sanitary sewers, water lines, and landscaping for Phase I of the Townhomes at Windsor Green. Additionally, the Defendant insurance company issued a Performance Bond on February 18, 2003, in the amount of $167,273.00 guaranteeing the performance of Phases II and III for The Townhomes at Windsor Green. Copies of these bonds are attached herewith as Collective Exhibit A and are numbered 164520 and 198119.

5. On or about July 6, 2009, a determination was made that Dial Properties had defaulted in its performance of its construction contract on The Townhomes at Windsor Green project. A letter was, therefore, issued to David Dial who was the principal in Dial Properties, LLC confirming that they were in default on a number of items that were unfinished pursuant to the contract. A copy of this letter is attached herewith as Exhibit B.

6. The unnamed Defendant, Dial Properties, LLC, after having

been put on notice indicated its intent to perform and the desire to finish The Townhomes at Windsor Green project. The construction company failed to perform and complete the items as listed on a summary attached herewith as Exhibit C.

7. As a result of the construction company, Dial Properties, failing to perform, the Defendant/Surety, North American Specialty Insurance Company was put on notice both orally and in writing that a claim was being made as a result of the default of the contractor and that a request was being made for the Defendant to complete these items of construction. To date, the Defendant has failed and refused to respond and to perform in accordance with the performance bonds previously issued.

8. The Defendant's failure to perform and complete the items as set out in this complaint has caused damages to the City and constitutes a breach of contract.

9. The Plaintiff respectfully submits that the actions of the Defendant and its failure to perform as surety on the performance bonds issued constitute a breach of contract and this breach of contract has caused damages for which they are liable.

PREMISES CONSIDERED, PLAINTIFF PRAYS:

1. That proper process issue and be served on the Defendant herein pursuant to the Tennessee Rules of Civil Procedure.

2. That the Court determine that the contractor, Dial Properties, LLC, was in default.

3. That the performance bonds issued by the Defendant, North

American Specialty Insurance Company, as surety, are valid and that their failure to comply with these bonds and complete this work constitutes breach of contract.

4. That the Court determine the amount of damages suffered by the Plaintiff, City of Goodlettsville, as a result of the Defendant's breach of the performance bonds.

5. That the Court determine and award attorney's fees to counsel for the Plaintiff herein.

6. For such further and general relief as the Court deems necessary.

Respectfully submitted,

HAYNES, FREEMAN & BRACEY, PLC

BY: _____
JOE M. HAYNES
Attorney for Plaintiff

140 North Main Street
P. O. Box 527
Goodlettsville, Tennessee 37070
Tel. No. (615) 859-1328
Bd. Of Prof. Resp. #2274

*AIA Document A312*

# Performance Bond



Bond #164520

Conforms with the American Institute of Architects, AIA Document A312.
Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):
Dial Properties, LLC
9000 Church Street East
Brentwood, TN 37027

SURETY (Name and Principal Place of Business):
North American Specialty Insurance Company
Islander Park Two
7530 Lucerne Dr., Ste. 110
Middleburg Hts., OH 44130

OWNER (Name and Address):
City of Goodlettsville, TN
105 South Main St.
Goodlettsville, TN 37072

*The Towhomes @ Windsor Green Phase I*

CONSTRUCTION CONTRACT
   Date: October 16 1998
   Amount: $192,261.00

Description (Name and Location): Townhomes at Windsor Green - storm drainage, sanitary sewer, waterline & landscaping

BOND
   Date (Not earlier than Construction Contract Date): October 16 1998
   Amount: $192,261.00

Modifications to this Bond:   ☒ None   ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Dial Properties, LLC   (Corporate Seal)

Signature: _____
Name and Title:
(Any additional signatures appear on page 2.)
(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: (615)661-8628
Thornton & Harwell Agency, Inc.
P.O. Box 5091, Brentwood, TN 37024

SURETY
Company: North American Specialty
Insurance Company   (Corporate Seal)

Signature: _____
Name and Title: Jeffrey B. Hollon, Attorney IN Fact

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2   If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3   If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

   3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

   3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

   3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4   When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

Case 3:10-cv-00707   Document 1-1   Filed 07/26/10   Page 7 of 13 PageID #: 10

4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## 12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | | SURETY | |
|---|---|---|---|
| Company: | (Corporate Seal) | Company: | (Corporate Seal) |
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Address: | | Address: | |

*AIA Document A312*

# Performance Bond

Bond #198119

Conforms with the American Institute of Architects, AIA Document A312.
Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

| | |
|---|---|
| CONTRACTOR (Name and Address):<br>Dial Properties, LLC<br>9000 Church Street, East<br>Brentwood, TN 37027 | SURETY (Name and Principal Place of Business):<br>North American Specialty Insurance Company<br>13010 Morris Rd., Ste. 150<br>Alpharetta, GA 30004 |

OWNER (Name and Address):
City of Goodlettsville
105 South Main Street
Goodlettsville, TN 37072

CONSTRUCTION CONTRACT
   Date: January 27 2003
   Amount: $167,273.00

   Description (Name and Location): The Townhomes at Windsor Green, Phase I Section II

*The Townhomes @ Windsor Green Phases II & III*

BOND
   Date (Not earlier than Construction Contract Date): February 18 2003
   Amount: $167,273.00

Modifications to this Bond:   ☒ None   ☐ See Page 2

CONTRACTOR AS PRINCIPAL
Company: Dial Properties, LLC   (Corporate Seal)
Signature: _____
Name and Title:
(Any additional signatures appear on page 2.)

(FOR INFORMATION ONLY - Name, Address and
Telephone) AGENT or BROKER: (615)372-6120
BB&T - Thornton & Harwell
P.O. Box 5091 - Brentwood, TN 37024

SURETY
Company: North American Specialty Insurance Company   (Corporate Seal)
Signature: _____
Name and Title: Bob J. Stout, Attorney IN fact

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):

1   The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2   If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3   If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

   3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

   3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

   3.3 The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4   When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

Case 3:10-cv-00707   Document 1-1   Filed 07/26/10   Page 9 of 13 PageID #: 12

4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

.2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

5 If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6 After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1 The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2 Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3 Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7 The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators or successors.

8 The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9 Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10 Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11 When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

## 12 DEFINITIONS

12.1 Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2 Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3 Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4 Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

MODIFICATIONS TO THIS BOND ARE AS FOLLOWS:

(Space is provided below for additional signatures of added parties, other than those appearing on the cover page.)

| CONTRACTOR AS PRINCIPAL | SURETY |
|---|---|
| Company: _____ (Corporate Seal) | Company: _____ (Corporate Seal) |
| Signature: _____ | Signature: _____ |
| Name and Title: | Name and Title: |
| Address: | Address: |




# Goodlettsville

William B. Brasier
*Director*

July 9, 2009

Mr. David Dial
Dial Properties, LLC
9000 Church Street East
Brentwood, TN 37027

Re: **Townhomes of Windsor Green**
    **Goodlettsville, TN**

Dear Mr. Dial,

It appears that Dial Properties is unable to perform work necessary to promptly and properly complete the referenced development as approved by the Planning Commission of the City of Goodlettsville.

In a meeting held on June 29th, you stated that Dial Properties does not have the financial means to complete the project. In effect, this means that Dial Properties has defaulted on its obligations to complete the project.

That being the case, you are hereby notified that the City of Goodlettsville will ask the Surety Company to complete the project. This action does not relieve Dial Properties of its obligation to fully complete the development. Additionally the City will take other steps it deems necessary to protect the Public's interest.

Attached is a list of items remaining to be completed.

Sincerely,

William B. Brasier

pc: Senator Joe Haynes

215 CARTWRIGHT ST • GOODLETTSVILLE TN 37072 • (615) 859-2740



# The Townhomes of Windsor Green 7-2-09

**Phase One - Section One:**

- Concrete swale's for detention pond have not been installed
- Section of sidewalk not installed along Windsor Trace
- Trench drain at entrance is non functioning

**Phase One - Section Two:**

- Locate / uncover manhole
- Yard areas behind building H to be re-graded / stabilized for positive drainage

**Phase One - Section Three:**

- Approx. 180' of roadway including cul-de-sac not constructed
- Associated sidewalk and curbing not constructed
- Retaining wall behind building (L) has not been constructed
- Landscaping at detention pond is not complete
- Crushed stone swale has not been installed
- Low flow concrete swale has not been installed in detention pond
- Concrete swale from HW-3 has not been installed
- Hood is missing from inlet at CB-13
- Verify status of water line installation in Section 3
- Various site grading / stabilization issues
- Retaining wall behind building I to be removed and replaced.
- Yard areas behind building I to be re-graded / stabilized for positive drainage
- Locate / uncover manholes

**Overall Development:**

- Certification letter from landscape architect
- Record drawings for sanitary sewer (two hard copies and one electronic copy)
- Final inspection to be done after all remaining work is completed

- TV logs for sanitary sewer – see below

## Internal TV Inspection: Section 02730-23

- The Contractor is required to conduct an Internal T.V. Inspection using CCTV Unit. The CCTV used must record and display on screen the footage from the center of the manhole it is filming from. The direction the CCTV unit must use is from upstream to downstream manhole (with the flow, NOT AGAINST) unless otherwise permitted by the City Engineer or a representative. The recorded internal T.V. Inspection video will be provided to the City Engineer as VHS videotape or in electronic format burnt to a compact disc or digital videodisc. A TV log must be recorded with all pertinent information (i.e. day, time, pipe diameter, service locations, blockages, deformed pipe, etc.) The contractor may also perform smoke tests as requested by the City Engineer or a representative. No additional cost to the City of Goodlettsville shall be charged by the contractor for either smoke testing or TV inspections. Furthermore, the Contractor will be responsible for correcting all deficiencies discovered by these tests at no additional cost to the City of Goodlettsville. T.V. WORK WILL NOT BE CONDUCTED UNTIL ALL SITE WORK IS COMPLETE.